[Cite as *State v. Hart*, 2016-Ohio-317.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26517 |
| | : | |
| v. | : | Trial Court Case No. 14-CR-0504/1 |
| | : | |
| AIMEE HART | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 29th day of January, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

ENRIQUE RIVERA-CEREZO, Atty. Reg. No. 0085053, Law Office of Joseph C. Lucas, LLC, 61 North Dixie Drive, Suite B, Vandalia, Ohio 45377
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Aimee Hart appeals from her conviction and sentence on one count of

promoting prostitution in violation of R.C. 2907.22(A)(3), a fourth-degree felony.

{¶ 2} Hart advances five assignments of error. First, she contends R.C. 2907.22(A)(3) is unconstitutional as applied. Second, she claims the statute is unconstitutional on its face. Third, she asserts that the trial court erred in permitting amendment of her indictment, resulting in a change in the elements of her offense. Fourth, she argues that her 18-month prison sentence and designation as a Tier I sex offender constitutes cruel and unusual punishment in violation of the Eighth Amendment. Fifth, she maintains that the trial court erred in admitting into evidence a DVD recording of a conversation between two witnesses.

{¶ 3} The record reflects that Hart's conviction was based on her act of driving her friend, Tiffany Isaacs, from an Englewood motel room to a Dayton-area apartment where Isaacs met an undercover police officer for the purpose of engaging in prostitution. At trial, the State elicited testimony that Hart and Isaacs both had worked as prostitutes to support their drug usage. (Trial Tr. at 135, 138, 150, 203). On the day in question, an undercover officer responded to an Internet ad Isaacs had placed seeking to perform sex acts for money. Isaacs spoke with the officer on the telephone and agreed to meet him at an apartment off of Dixie Drive. (*Id.* at 134-135). Isaacs then called Hart and asked for a ride to the apartment. (*Id.* at 135). Isaacs testified that she told Hart she needed the ride for "a date." (*Id.* at 142, 151). She explained that "a date" meant sex for hire. (*Id.* at 138, 150). According to Isaacs, she and Hart both knew that "a date" meant engaging in prostitution because both women "did dates" and "knew what each other was doing." (*Id.* at 149-150). Hart agreed to take Isaacs to the apartment and picked her up for the trip an hour or so later. (*Id.* at 135, 140). Upon arriving at the apartment, Hart waited in her

vehicle in the parking lot while Isaacs went inside. (*Id.* at 204-205). Isaacs returned to Hart's vehicle a few minutes later because she had forgotten to bring a condom. (*Id.* at 141-143). Hart gave Isaacs a condom, and Isaacs went back inside the apartment. (*Id.* at 136-137, 143). Shortly thereafter, police arrested Isaacs and Hart. (*Id.* at 149, 200).

{¶ 4} Hart subsequently was indicted on one count of promoting prostitution in violation of R.C. 2907.22(A)(3). Specifically, the indictment alleged that Hart "did knowingly transport another, to-wit: TIFFANY ISAACS, or cause another to be transported across the boundary of this state or of any county in this state, in order to facilitate the other person's engaging in sexual activity for hire; contrary to the form of the statute (in violation of Section 2907.22(A)(3) of the Ohio Revised Code) * * *." (Doc. #2). The case proceeded to a jury trial on October 23-24, 2014.

{¶ 5} Shortly after the jury was sworn, defense counsel made an oral motion to dismiss. (Trial Tr. at 117). Defense counsel made two points. First, counsel argued that the indictment was incorrect insofar as it quoted a version of R.C. 2907.22(A)(3) that was in effect prior to a 2013 amendment by H.B. 59. Second, counsel argued that the post-amendment version of the statute in effect at the time of her offense in January 2014 was void for vagueness. The post-amendment version was identical to the previous statute except the language quoted above regarding transportation across state or county lines was omitted. As amended by H.B. 59, R.C. 2907.22(A)(3) provided that no person shall knowingly "[t]ransport another, or cause another to be transported, in order to facilitate the other person's engaging in sexual activity for hire." After discussing the issue with counsel, the trial court overruled the motion to dismiss. (Trial Tr. at 117-120). Following the presentation of evidence and closing arguments, the trial court instructed the jury

consistent with the post-amendment version of R.C. 2907.22(A)(3) in effect at the time of Hart's offense. (*Id.* at 229-230). The jury found her guilty. (*Id.* at 237; Verdict Entry, Doc. #25). Prior to sentencing, Hart filed a written motion to dismiss and for acquittal, arguing that the amended version of R.C. 2907.22(A)(3) violated the one-subject rule of the Ohio Constitution and was unconstitutionally overbroad. The trial court overruled the post-verdict motions, sentenced Hart to 18 months in prison, and designated her a Tier I sex offender. (Trial Tr. at 255; Termination Entry, Doc. #36). This appeal followed.

{¶ 6} In her first assignment of error, Hart contends the trial court erred in failing to dismiss the charge against her on the basis that R.C. 2907.22(A)(3) is unconstitutional as applied. Her argument is that the post-amendment version of the statute applied at trial was enacted in violation of Ohio's one-subject rule. In response, the State contends Hart waived this issue because she failed to raise it until after the jury's guilty verdict. Alternatively, the State asserts that if the amendment at issue violated the one-subject rule, the remedy is to sever the offending portion of the statute (i.e., the amendment) and to apply the former version. The State contends that essentially is what occurred.

{¶ 7} Having reviewed the record, we agree with the State that Hart waived her one-subject-rule argument by failing to raise it timely. Hart's argument is that the amendment to R.C. 2907.22(A)(3) was part of H.B. 59, a large appropriations bill. She asserts that there is no nexus between the crime of promoting prostitution and the fiscal budget. Absent such a nexus, she maintains that the amendment to R.C. 2907.22(A)(3) in H.B. 59 constituted improper "log rolling" in violation of the one-subject rule of Article II, Section 15(D) of the Ohio Constitution.[1]

---

[1] We note that R.C 2907.22 was recodified by Am. Sub. H.B. No. 130, effective June 20,

**{¶ 8}** Although the indictment quoted the pre-H.B. 59 version of R.C. 2907.22(A)(3), it is readily apparent from the context of the entire transcript that there is no evidence that the transportation involved crossing any state or county line. Furthermore, both parties recognized, before the commencement of trial testimony, that the H.B. 59 version of the statute was the one in effect when Hart drove Isaacs to the apartment. (Trial Tr. at 117-118). In fact, defense counsel explicitly sought dismissal on the basis that the post-amendment H.B. 59 version of the statute applied to her and was unconstitutionally void for vagueness. (*Id.*). In making this argument, defense counsel noted the absence of post-amendment case law supporting her argument. (*Id.* at 118). While making the void for vagueness argument in regards to the applicable H.B. 59 version, defense counsel failed to raise the one-subject-rule argument, and that contention was not asserted until after the jury returned a guilty verdict against Hart.

**{¶ 9}** Under Crim.R. 12, a motion to dismiss an indictment on constitutional grounds must be filed before trial. Here, however, the indictment incorrectly recited the pre-H.B. 59 version of R.C. 2907.22(A)(3). Therefore, at the time of the indictment, defense counsel reasonably may not have been alerted to the need to argue that the H.B. 59 version of the statute violated the one-subject rule. When the issue arose prior to the presentation of evidence, however, defense counsel could and should have raised the one-subject-rule argument concomitantly with the argument that the H.B. 59 version of the statue was void for vagueness. It was not reasonable to wait until after the presentation of the evidence and the jury's return of a guilty verdict to raise this issue.

---

2014, which was "intended to confirm and continue the changes to those sections that were made in Am. Sub. H.B. 59 of the 130th General Assembly, the validity of which might be called into question." *Id.*, Section 4.

Therefore, on the record before us, we find waiver applicable.

{¶ 10} Hart also argues, however, that we should find plain error and should disregard waiver even if it applies. We find no plain error here. Even if we accept, arguendo, that the H.B. 59 amendment to R.C. 2907.22(A)(3) impermissibly violated the one-subject rule, it is far from plain to us that Hart was prejudiced. As set forth above, the H.B. 59 version of R.C. 2907.22(A)(3) effective September 2013 provides that no person shall knowingly "[t]ransport another, or cause another to be transported, in order to facilitate the other person's engaging in sexual activity for hire." If that version was invalid because it violated the one-subject rule, then Hart contends the version of the statute applicable to her was the pre-H.B. 59 version. (Appellant's brief at 10). That earlier version, which was quoted in the indictment, provided:

(A) No person shall knowingly:

* * *

(3) Transport another, or cause another to be transported across the boundary of this state or of any county in this state, in order to facilitate the other person's engaging in sexual activity for hire[.]

{¶ 11} Hart's theory is that she would not be guilty under this pre-H.B. 59 version of the statute because she did not transport Isaacs across any state or county line. Therefore, she argues that it was plain error to try her under the H.B. 59 version of the statute, which omitted any reference to crossing a state or county line. We find no obvious error or defect, however, because it is not clear that Hart's reading of the pre-amendment version of the statute is correct.[2] Based on the placement of the punctuation in subsection

---

[2] On appeal, Hart cites limited case law from other districts in which it was assumed by

(A)(3), the most natural reading of the statute is that a defendant may be found guilty in one of two ways: (1) by knowingly transporting another in order to facilitate the other person's engaging in sexual activity for hire; or (2) by knowingly causing another to be transported across the boundary of this state or of any county in this state in order to facilitate the other person's engaging in sexual activity for hire. In other words, the requirement of crossing a state or county line applies only when a defendant is convicted of *causing another to be transported*. It does not apply when a defendant is convicted of actually *transporting another*. If the statute were intended to be read as Hart suggests, the second comma in subsection (A)(3) correctly would be placed after the word "transported." It then would read that no person shall knowingly "[t]ransport another, or cause another to be transported**[,]** across the boundary of this state or of any county in this state in order to facilitate the other person's engaging in sexual activity for hire."

{¶ 12} As the pre-H.B. 59 version of the statue is written, however, the crossing a state or county line only applies to the act of causing another to be transported, not actually transporting another. The placement of commas matters, and it can change the meaning of a sentence.[3] Based on the placement of the commas in the pre-amendment version R.C. 2907.22(A)(3), we believe Hart could have been convicted thereunder for knowingly transporting Isaacs in order to facilitate Isaacs engaging in sexual activity for hire, regardless of whether a state or county line was crossed. Indeed, that was the State's theory of the case under either version of the statute, as it never suggested, and

---

the parties and the court that the pre-H.B. 59 requirement of crossing a state or county line applied equally to *transporting another* and *causing another to be transported*. However, she has cited no case law, and we have found none, actually and necessarily deciding the issue.

[3] *See*, e.*g.*, "Let's eat, grandma" or "Let's eat grandma."

presented no evidence, that Hart had crossed any state or county line.

{¶ 13} When read as containing two independent clauses (as we have interpreted it), the pre-H.B. 59 version of R.C. 2907.22(A)(3) is identical to the post-amendment version of the statue insofar as it prohibits actually transporting another to facilitate sex for hire. Therefore, Hart cannot demonstrate prejudice or plain error in being prosecuted under the H.B. 59 version of the statute that she claims violated the one-subject rule. Accordingly, the first assignment of error is overruled.

{¶ 14} In her second assignment of error, Hart contends the H.B. 59 version of R.C. 2907.22(A)(3) under which she was convicted is facially overbroad and void for vagueness. With regard to overbreadth, she argues that it lacks a mens rea of criminal intent. She suggests that it punishes the innocent transportation of people who happen to be prostitutes. She argues that "there is no provision under the statute that the person [doing the transporting] knew or had to know whether the person [being transported] was going to engage in sexual activity for hire." (Appellant's brief at 16). She also asserts that the statute "makes it illegal for any professional driver to give a ride to another individual who is going to do sexual activity for hire, whether the driver knew about it or not." (*Id.* at 16-17). Similarly, she maintains that the statute "makes it illegal for any person to help a prostitute by transporting her to a medical doctor to receive contraceptives or to transport her to a pharmacy to buy condoms whether the person knew that she was a prostitute or not." (*Id.* at 17). Finally, Hart argues that R.C. 2907.22(A)(3) is analogous to the former child-enticement statute, which was invalidated on overbreadth grounds in *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156.

{¶ 15} Upon review, we find Hart's overbreadth argument to be unpersuasive.

Once again, the H.B. 59 version of R.C. 2907.22(A)(3) provides that "[n]o person shall knowingly * * * [t]ransport another, or cause another to be transported, in order to facilitate the other person's engaging in sexual activity for hire[.]" Hart was convicted of knowingly transporting Isaacs in order to facilitate Isaacs engaging in sexual activity for hire. Contrary to Hart's argument, we believe the statute requires a mens rea of criminal intent and is not unconstitutionally overbroad. It only prohibits *knowingly transporting another in order to facilitate* that other person engaging in prostitution. The statute expressly provides a "knowing" mens rea. Furthermore, a defendant cannot be found guilty unless he or she knowingly provides transportation "in order to facilitate" sexual activity for hire, which suggests an intent to aid another in engaging in prostitution. Contrary to Hart's argument, we are unpersuaded that the statute would punish a friend, professional driver, or good Samaritan who unknowingly facilitates sexual activity for hire by transporting a prostitute without awareness of the prostitute's intent to engage in unlawful sexual activity. The language of the statute simply does not support such a conclusion.

{¶ 16} Hart's reliance on the child-enticement statute is equally unpersuasive. With certain exceptions, that statute, former R.C. 2905.05(A), provided that "[n]o person, by any means and without privilege to do so, shall knowingly solicit, coax, entice, or lure any child under fourteen years of age to accompany the person in any manner * * *." The Ohio Supreme Court noted that "[w]ith respect to those who are not specifically exempted (i.e., legal custodians, those with permission from a custodian, and those listed under R.C. 2905.05(A)(2)), the statute prohibits anyone from asking any child to accompany the person in any manner and for any reason." *Romage* at ¶ 11. As a result, the statute criminalized, among countless other things, "a primary-school coach offering to drive a

team member home to retrieve a forgotten piece of practice equipment; a parent at a community facility offering to drive another's child home so she does not have to walk; a senior citizen offering a 13-year-old neighborhood child money to help with household chores; a 14-year-old asking his 12-year-old friend to go for a bike ride." *Id.* at ¶ 12. As a result, the Ohio Supreme Court found the statute unconstitutionally overbroad. *Id.* at ¶ 18. In our view, R.C. 2907.22(A)(3) bears little similarity to the child-enticement statute at issue in *Romage*. It does not prohibit knowingly transporting a prostitute anywhere for any reason. It narrowly prohibits knowingly transporting a prostitute for a specific purpose, to wit: "in order to facilitate * * * engaging in sexual activity for hire." Unlike the child-enticement statute, R.C. 2907.22(A)(3) is not unconstitutionally overbroad.

{¶ 17} Alternatively, Hart argues that the H.B. 59 version of R.C. 2907.22(A)(3) is void for vagueness. She claims the statute "does not have specific standards, therefore making its enforcement susceptible to arbitrary and discriminatory forces." She also contends "the law is not clear on what is the impermissible conduct." (Appellant's brief at 18).

{¶ 18} The statute provides that "[n]o person shall knowingly * * * [t]ransport another, or cause another to be transported, in order to facilitate the other person's engaging in sexual activity for hire[.]" Hart focuses on the phrase "cause another to be transported" and argues that it is impermissibly vague. The State's theory at trial, however, was that Hart actually transported Isaacs, not that she caused Isaacs to be transported. Hart herself admitted that she drove Isaacs to the apartment where the undercover officer waited. (Trial Tr. at 197-198, 204). We see nothing impermissibly vague about prohibiting the transportation of another in order to facilitate the other

person's engaging in sex for hire. The second assignment of error is overruled.

{¶ 19} In her third assignment of error, Hart contends the trial court erred in permitting her indictment to be "amended," resulting in a change in the elements of her offense. Her argument focuses on the fact that she was indicted under the pre-H.B. 59 version of R.C. 2907.22(A)(3), but tried and convicted under the H.B. 59 version of the statute. As discussed above, the H.B. 59 amendment deleted the prior reference to crossing a state or county by making the following change: "(3) Transport another, or cause another to be transported ~~across the boundary of this state or any other state or of any county in this state~~, in order to facilitate the other person's engaging in sexual activity for hire." Hart's indictment contained the stricken language. Consistent with H.B. 59, which was in effect when she committed her offense, the jury charge in this case did not include the stricken language. Hart argues that deleting the reference to crossing a state or county line improperly deleted an element of the offense, thereby changing the identity of the crime charged, in violation of Crim.R. 7(D). Conversely, the State argues that the reference to crossing a state or county line in the indictment was irrelevant, superfluous language.

{¶ 20} Whether the reference to crossing a geographical boundary was an element of the pre-H.B. 59 charge in the indictment or superfluous language depends, of course, on whether that language applied to both *transporting another* and *causing another to be transported* or whether it applied only to *causing another to be transported*. Although we discussed that issue above in our analysis of Hart's first assignment of error, we need not resolve it to dispose of the third assignment of error. Even assuming, arguendo, that Hart's indictment was "amended" when she was indicted under the pre-H.B. 59 version

of the statute and tried under the H.B. 59 version, we find no reversible error.

{¶ 21} Prior to the commencement of trial testimony, defense counsel pointed out that the indictment was "not correct under the current law." (Trial Tr. at 117). She urged the trial court to apply the H.B. 59 version of the statute, which was in effect at the time of Hart's offense, and to dismiss the charge on the basis that the H.B. 59 version of the statute was void for vagueness. (*Id.* at 117-118). Any doubt that defense counsel was urging the trial court to apply the H.B. 59 version of the statute was dispelled by counsel's recitation of the H.B. 59 version of the statute and her observation, in connection with her void-for-vagueness argument, that "there's basically no case law since this date" (i.e., the date of the H.B. 59 amendment). *Id.* at 118. The prosecutor agreed that the version of R.C. 2907.22(A)(3) recited in the indictment was not the applicable law because the statute had been amended. (*Id.* at 118). The trial court proceeded to find the H.B. 59 version of the statute not void for vagueness. (*Id.* at 120). It later instructed the jury, consistent with the H.B. 59 version of the statute, that Hart could be found guilty if she "knowingly transported another or caused another to be transported in order to facilitate the other person's engaging in sexual activity for hire." (*Id.* at 229-230).

{¶ 22} Hart cannot complain on appeal about the trial court applying the H.B. 59 version of R.C. 2907.22(A)(3) when defense counsel herself pointed out that it was the applicable version, urging the trial court to apply it and to dismiss the charge on the basis that the H.B. 59 version of the statute was void for vagueness. By doing so, defense counsel effectively waived any potential error under Crim.R. 7(D). *See*, *e.g.*, *State v. Williams*, 8th Dist. Cuyahoga No. 88737, 2007-Ohio-5073, ¶ 10 (recognizing that "[t]he provisions of Crim.R. 7(D) are primarily for the defendant's protection and * * * may be

waived"). Additionally, because defense counsel essentially suggested and participated in the "amendment," Hart cannot now raise the issue as an error to attack her conviction. *Id.* at ¶ 18. Accordingly, the third assignment of error is overruled.

{¶ 23} In her fourth assignment of error, Hart claims the trial court violated the Eighth Amendment when it sentenced her to 18 months in prison and designated her a Tier I sex offender. Although she did not raise this issue below, she argues that the alleged constitutional violation constitutes plain error. The essence of Hart's argument is that Isaacs' act of soliciting prostitution was only a third-degree misdemeanor whereas her act of promoting prostitution by transporting Isaacs was a fourth-degree felony. Hart reasons that it constitutes cruel and unusual punishment to sentence her to 18 months in prison and impose a 15-year sex-offender registration requirement when Isaacs, the "primary offender" who organized the planned sexual activity and intended to participate in it, faced only a misdemeanor sentence. Hart asserts that this disparity is conscience shocking and violates the Eighth Amendment.

{¶ 24} This court recently rejected a similar argument in *State v. Dukes*, __ N.E.3d __, 2015-Ohio-4714 (2d Dist.). There the defendant was convicted of promoting prostitution in violation of R.C. 2907.22(A)(2). The offense was a fourth-degree felony just like Hart's promoting-prostitution conviction under R.C. 2907.22(A)(3). The defendant in *Dukes* received a felony sentence of up to five years of community control. Like Hart, he also was required to register as a sex offender for 15 years. Like Hart, the defendant in *Dukes* challenged his sentence on Eighth Amendment grounds. We rejected the argument, finding "nothing 'cruel and unusual' about the Ohio legislature's decision to punish individuals who supervise, manage, or control the actions of a prostitute more

harshly than the conduct of the prostitute." *Id.* at ¶ 34. Although Hart admittedly received a more severe sentence than the defendant in *Dukes*, the same reasoning applies here. As in *Dukes*, we find nothing conscience shocking about the General Assembly's decision to punish individuals who knowingly transport prostitutes to facilitate sexual activity for hire more harshly than prostitutes themselves. The relative culpability of prostitutes and those who promote prostitution involves a matter of substantive penological judgment that is broadly within the province of the legislature. As a result, courts properly intervene only when the sentence imposed is grossly disproportionate to the offense. *State v. Presley*, 2d Dist. Montgomery No. 25511, 2013-Ohio-3762, ¶ 7-13.

{¶ 25} We do not find Hart's sentence grossly disproportionate to her conduct. Without her assistance, Isaacs would have had difficulty traveling from Englewood to Dayton to engage in prostitution. In her appellate brief, Hart argues that she could have been charged with only misdemeanor complicity if she had walked with Isaacs to the apartment and handed her a condom. The difference, however, is that walking with Isaacs to the apartment would not have helped her get there. Hart did not merely accompany Isaacs. She provided the transportation that facilitated Isaacs' attempt to carry out a criminal act. By doing so, she promoted prostitution, which the Ohio legislature has determined, in the exercise of its substantive penological judgment, warrants a fourth-degree felony conviction and sentence. We see nothing conscience shocking about punishing a person who promotes prostitution more severely than a prostitute. *Dukes* at ¶ 34. The fourth assignment of error is overruled.

{¶ 26} In her fifth assignment of error, Hart contends the trial court erred in admitting into evidence a DVD recording of a conversation between Isaacs and the

undercover officer in the apartment. Hart claims the videotape had marginal probative value, was duplicative, and was used to bolster the State's witnesses.

{¶ 27}  At trial, Hart's only objection to the jury hearing the recording was that it was repetitive of the testimony of Isaacs and the officer and that it "bolsters whatever." (Trial Tr. at 158-161). Prior to the State playing the DVD, Isaacs testified briefly about what occurred after she entered the apartment. Isaacs testified that she went into the apartment and realized she had forgotten a condom. As a result, she returned to Hart's waiting vehicle, retrieved a condom from Hart, and went back inside the apartment. (Trial Tr. at 136-137, 141, 143). Isaacs stated that she engaged in some unspecified conversation with the undercover officer before being arrested. (*Id.* at 137, 143).

{¶ 28} The officer provided more detail. He testified that he interacted with Isaacs after she entered the apartment. (*Id.* at 157-158). Over defense counsel's objection, the State then played the DVD audio recording of the conversation that occurred between the officer and Isaacs before her arrest. (*Id.* at 164). After the recording was played, the officer testified that it accurately depicted his interaction with Isaacs, including their discussion about using a condom, Isaacs leaving to get a condom from Hart, Isaacs returning with a condom, and their discussion about the sex acts she would perform and how much money she wanted to perform them. (*Id.* at 164-166).

{¶ 29} Upon review, we conclude that the conversation captured on the DVD recording is consistent with the testimony of Isaacs and the officer. As a result, it was repetitive of that testimony and it also appears to have been hearsay. Under Evid.R. 801(D)(1)(b), a prior statement by a witness is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is

"consistent with declarant's testimony *and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive.*" (Emphasis added). Here the statements captured on the recording appear to have been hearsay, even though Isaacs and the officer testified, because the recording was not offered to rebut a charge of fabrication, improper influence, or motive. Indeed, no one at trial disputed that Isaacs and the officer discussed engaging in sexual activity inside the apartment. Moreover, Hart herself admitted giving Isaacs a condom to take back inside. (Trial Tr. at 198-199).

{¶ 30} But even if the trial court erred in allowing the video to be played, we find the error harmless. The only real dispute at trial was whether Hart transported Isaacs to the apartment with knowledge that Isaacs intended to engage in sexual activity for hire. The evidence about what occurred inside the apartment *after* Isaacs arrived there was undisputed and had little or no bearing on what Hart knew when transporting Isaacs.[4] As for Hart's argument about improper "bolstering," the DVD did little to bolster anyone's testimony given that the matters discussed on the recording were largely collateral to the central issue in the case and were undisputed. As set forth above, Isaacs' testimony about what the DVD recording depicted was general and brief. She mentioned going inside the apartment, meeting the undercover detective, exiting the apartment to retrieve a condom, returning to the apartment, and engaging in some conversation before being arrested. These issues were not in dispute.

---

[4]Arguably, the evidence about Isaacs exiting the apartment and retrieving a condom from Hart could have had some tendency to show Hart's knowledge of what was going to occur. By that point, however, the act of transportation already had been completed. To the extent that the condom exchange may have been relevant, however, Hart testified and admitted that she gave Isaacs a condom.

**{¶ 31}** With regard to establishing Hart's knowledge when she transported Isaacs—the key issue in the case—Isaacs also testified that she told Hart she needed the ride for "a date." (*Id.* at 142, 151). She explained that "a date" meant sex for hire. (*Id.* at 138, 150). According to Isaacs, she and Hart both knew that "a date" meant engaging in prostitution because both women "did dates" and "knew what each other was doing." (*Id.* at 149-150). The conversation captured in the DVD recording did not address this key aspect of Isaacs' testimony, however, and did nothing to "bolster" it. Therefore, we conclude that the trial court's admission of the DVD recording into evidence constituted at most harmless error. The fifth assignment of error is overruled.

**{¶ 32}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Enrique Rivera-Cerezo
Hon. Gregory F. Singer